IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM L. BERKLEY, #270-194          *

           Plaintiff          *

       v.          *     CIVIL ACTION NO. GLR-13-946

CORIZON MARYLAND, et al.          *

          Defendants          *

                ***

## MEMORANDUM

Pending is self-represented Plaintiff William Berkley's Complaint filed pursuant 42 U.S.C. § 1983, raising Eighth Amendment claims of constitutionally inadequate medical care.[1] ECF No. 1.   Defendants Corizon, Inc., Maryam Messforosh, P.A., and Jennifer Castanares, R.N.,[2] by their counsel move for dismissal pursuant to Fed. R. Civ. P 12(b)(1), 12(b)(6), and 56(c).   ECF No. 22.   Notice of Defendants' dispositive motion and the opportunity to file affidavits and records in response were sent to Berkley pursuant to the requirements of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).   ECF No. 23.   Plaintiff has filed a "limited" opposition in response without any declarations in support.   ECF No. 26.   For reasons to follow, Defendants' Motion, treated as one for summary judgment, will be denied without prejudice subject to renewal with supporting documentation and affidavits.

_____

[1] Mindful that Berkley is proceeding pro se, this Court must liberally construe his pleadings.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972) (pleadings filed by a pro se litigant are held "to less stringent standards than formal pleadings drafted by lawyers).

[2] Service has not been obtained on David Mathis, M.D.  For reasons apparent herein, the Court will direct counsel to provide Dr. Mathis' home address under seal so that he can be served.

**BACKGROUND**

Berkley is an inmate at the Maryland Correctional Training Center.  He states that in August of 2009, he was diagnosed with Hepatitis C.  In October of 2009, Maryam Messforosh, a physician's assistant, prescribed Ribavirian and Pegasy for treatment of the condition.  Berkley received four Ribavirian pills, twice daily, and one injection of Pegasy each week.  Messforosh advised Berkley side effects of the medications may include weight loss, lack of balance, weakness, low blood count, shortness of breath, and dizziness. Messforosh instructed Berkley to inform her if he experienced any of these symptoms.  ECF No. 1.

Berkley began experiencing increasing symptoms almost immediately after starting the medications.  Id. ¶ 2.  He visited the medical department several times between January 2010 and April 2010 complaining that he was losing weight too fast, could not breathe right, had very poor balance, and was extremely weak.  Id. ¶ 3.  In each instance, Messforosh maintained that the side effects were normal and advised Berkly to continue taking the medication.  Berkly asserts that he repeatedly requested that test and blood work be administered concerning the symptoms he was experiencing, however, no tests were conducted.

On April 14, 2010, Berkley became dizzy while receiving his medication, fell, and was unable to stand straight.  Jennifer Castanares, R.N., who witnessed Berkley fall, took his blood pressure.  Berkley's blood pressure was a very low 92/48.[3]  Berkley alleges Castanares put him on the list to see Messforosh because she did have time to treat him.  He asserts that he requested to see someone other than Messforosh because he felt Messforosh was not taking his condition

---

[3]   Berkley's medical  records indicate that  he has a history of hypertension (high blood pressure).  ECF No. 22, Ex. 1, p. 65; Defendant's Memorandum,  p. 14.  He also has HIV (human  immunodeficiency  virus).    ECF No. 22, Ex. 1 pp. 47, 182.    See http://www.nlm.nih.gov/medlineplus/hivaids.html.

seriously.  Id. ¶ 4.  Nevertheless, on May 28, 2010, Berkley was seen by Messforosh.  Once again he expressed his severe discomfort and requested that medical tests be administered.  By this time, Berkley asserts that he lost 44 pounds in three months.  Messforosh, however, continued to maintain that the side effects he was experiencing were normal and denied his requests for additional medical testing.

On June 11, 2010, Berkley was seen by Lino Quilo, M.D.  Berkley complained about the pain, suffering, dizziness, fatigue, and weight loss.  Dr. Quilo called 911 and Berkley was rushed to Peninsula Regional Medical Center.  Dr. Thrimm discovered that the medication Berkley was taking was toxic to his system, such that it was destroying Berkley's red blood cells.  Further, Berkley's body was not able to reproduce blood cells at the same rate.  Id.  ¶ 6.  As a result, Berkley had only 2.5 pints of blood in his body, whereas the human body normally has 8 pints. On June 13, 2010, Berkley received two blood transfusions.  The first one was for two pints of blood.  The second added an additional four pints of blood.

Berkley further asserts that the toxicity of the medication resulted in heart dysfunction that would not have occurred if the medication was stopped upon the onset of his symptoms.  On June 17, 2010, as a result of his heart dysfunction, Berkley underwent a procedure during which Dr. Thrimm implanted a pacemaker.

Berkley filed his Complaint on March 28, 2013, alleging the Defendants were deliberately indifferent to his medical needs.  Id. ¶ 9.  He states that his pacemaker must be replaced every 10 years, causing him additional pain and stress.  Id.  As relief, he is requesting compensatory damages of $1 million dollars and punitive damages of $1 million dollars against each Defendant.

Defendants, however, assert that there is no evidence of deliberate indifference to

Berkley's serious medical needs.  They dispute that he received inadequate care or that his medical condition was ignored.  Further, they contend Berkley did not timely complain of side effects as he alleges, and when he expressed concerns, they were addressed.  In support, Defendants have submitted verified copies of Berkley's medical records.  Noticeably absent, however, are any declarations from Berkley's medical providers refuting his contentions that his concerns of weight loss, dizziness, and gaunt appearance were not timely addressed by appropriate tests.

## DISCUSSION

### A.  Standard of Review

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(b)) (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. Fed. R. Civ.  P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247–48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case. <u>Id.</u> at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven–Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven–Lewis</u>, 249 F.3d at 265. Here, because the Court will consider matters outside of the pleading, Defendants' Motion will be construed as a Motion for Summary Judgment.

## B. Analysis

Deliberate indifference to a prisoner's serious injury "constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted). Every allegation by a prisoner that he has not received adequate medical treatment does not, however, state a violation of the Eighth Amendment. <u>Id.</u>

To state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. <u>See</u> <u>Gamble</u>, 429 U.S. at 106. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The subjective component requires "subjective recklessness" in the face of the serious medical condition. <u>Farmer</u>, 511 U.S. at 839‒40.

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown, 240 F.3d at 390 (citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Here, Berkley's medical records indicate that weight loss was detected as early as December of 2009. Berkley's recorded complaints of dizziness, nausea, and low blood pressure readings belie Defendants' assertion that Berkley failed to complain about his symptoms. Berkley claims he repeatedly reported his symptoms to Messforosh who counseled him to "give it time" and advised him that his symptoms were "normal." It is troubling that Defendants have submitted no declaration by Messforosh or other medical providers in support of the dispositive motion or attempt to explain the results of the lab reports provided to this Court. Review of Berkley's records and the pleadings plainly show there are genuine issues of material fact concerning Defendants' response to Berkley's complaints. Accordingly, summary judgment will be denied.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment (ECF No. 22) will be denied without prejudice subject to refiling within forty-five days of the Court's Order with additional supporting exhibits and declarations. Berkley will be provided an opportunity thereafter to file a reply with affidavits and exhibits in support.  A separate Order follows.


September 3, 2014                                                      /s/

                                                     _____
                                                     George L. Russell, III
                                                     United States District Judge